Judge Minis
delivered tbe opinion.
This is an ejectment, wherein a judgment was remitted in favor of the plaintiff below, notv appellee, against the appellants, then defendants. On the trial, the plaintiff gave in evidence a patent to Mayo, and ⅜ subsequent deed from Mayo to Green Clay, and then a deed from Green Clay to the lessor of the plaintiff: and proved that these deeds and patent Covered the lamí demanded. Whtn the deed from Clay to tbe lessor of the plaintiff was introduced, the counsel for defendants objected to its being read, beCause it expressed no adequate consideration. The overruled the objection, and we conceive rightly. The deed purported to he made in obedience to a decree of the Madison circuit court, in a suit in chancery, wherein Tiro* Ibas C. Howard was complainant and the present defendants beltiw, the heirs ef Robert Porter, deceased, and Green Clay were defendants. Which decree’ had directed the Sale of the latid in question by commissioners, Who hat! sold it to the present lessor of the plaintiff, to whom the court *254 decreed that Green Clay should make the conveyance, he, Green Claj, holding (he legal estate. This rvas a very adequate consideration to support the title. Besides, immediately after the deed, the lessor of the plaintiff introduced and read the decree itself, and report of the sale by Commissioners acting under the decree. The deed was therefore properly admitted.
Tho’inf.nt have 'had a guardian to defend, the thernlsTaiid ’ till reversed, it is one of wide!) are3»«¿ ail judicial ^iusUnftnts are'1S eWctoife only.
jj was admitted by the plaintiff’s counsel, that the infatlt heirs of Robert Porter, deceased, who were defendents in this cause, and who were also defendants in said chan-cerj su¡t, bad, in that suit, no guardian appointed to defend ^or ‘hem- On this admission, the defendants moved the couyt to reject the decree as invalid on that account. The court overruled the objection. If the decree of tb^ court a* ga>'ist infants, then offtred in evidence, was invalid, becaus# guardian was appointed to defend for them, then the decision of the court below is erroneous. If, on the contra-r-v’ l^e ^ecree w^3 va.hd until reversed — was voidable only anc* not ¥0⅝ lhen the decision of the court is correct, Many of the acts of infants themselves in pais, are void, and others voidable only. But with regard to judicial acts done against them, the rule is, that they are voidable only. The infant defendant has his day, frequently allowed him, and almost always in a court of equity, after lie comes of age, to reverse or set aside decrees against him. If he does not avail himself of this privilege, the decision stands, and must have its force. Until measures are taken to avoid it, it likewise has its effect. From this principle it follows, that the decree was properly admitted. The plaintiff, who proved that Green Clay had given his bond for the land in contest, to Robert Porter, ⅛ bis life time, which bond had been pledged with Thomas Howard, who had brought the chancery suit aforesaid, to subject the land to sale, and the witnesses introduced by plaintiff, on the interrogation of the defendants’counsel, proved, that the lessor of the plaintiff, at the time he purchased at the sale of commissioners under the decree, understood that there was such, a bond given by Clay to Porter, and that Clay had bound himself to Porter for the legal estate. On this proof, the defendants’ counsel objected to the deed of Clay to the lessor of the plaintiff as fraudulent, because the lessor, as purchaser, bad notice of the bond to Porter. It might well be assumed as true, that the lessor of the plaiutiffhad this notice; for he was purchasing under a decree, the record of which disclosed the *255 tfrhóle matter, and directed a conveyance from Clay, in consequence of the bond. Assuming the ground that this ftas fraud in the lessor of the plaintiff, it would be difficult for the defendants in their attitude, claiming an equity only, to take advantage of it in a court of láw. It is decided by this court in the cases of Gilpin vs. Davis, 2 Bibb, 416, and Coleman vs Casey, l Marsh. 440, that the holder of a bare equity, cannot be permitted m a court ot law to impeach the legal estate set up in the plaintiff, and that it must be one legal title opposed to another, that can do it: and for the best of reasons. The equitable estate set up, may itsélf be subject to many equitable objections, and such a one as the chancellor would never enforce. To meet a defence set up under it, the plaintiff in an ejectment would be driven to substantiate these objections, and leave it with a jury to determine whether the equity was such as the chancellor would enforce specifically. Assuming (iie fact of fraud, the defence was then unavailing. In this case, however, there is not the least pretext for charging the lessor of the plaintiff with it. He was purchasing at the sale of an equity in laud, directed by a court of competent jurisdiction fairly ; and was bound to know the nature of that equity, which he was about to purchase. Such acts can never be stiled fraud.
„Tbeholder c,mty cannot, in a court of question a le-galestate,
If a leg's! title under a d cree be made to a bo. no, fide purchaser, and the decree under which the sale was made be ra» versed, I he original holder may be restored to his equity, biit the legal <$- tate is not thereby defeated: if the legal title can, in any case, be impeached, ’ it must be in e* quity, though tt.e party whose prop, erty has bien sold mv der a devee has his remedy ."gainst the parly at whose suit the decree W:.s c'.tsip.
The decree aforesaid, and sale under if, and conveyance mide in pursuance thereof, was further objected to, on the ground that the decree was rev-rsed, as will be. seen by the reported case in 1 Marsh. 353. But before the reversal, Clay bad conveyed in pursuance of the decree, and the lessor of the plaintiff bad paid the money, and bis title was complete. This objection was likewise overruled. This objection appears to be predicated upon the supposition, that the reversaPof the decree by this court, not only restored Porter’s heirs to their equity, which was lost by it, but also divest d the lessor of the plaintiff of the lega! title which lie had acquired. Assuming it as correct, that the reversal restored to the defendants in this case, their equity, it cannot be admitted that it stripped the lessor of the plaintiff of the legal estate acquired by his conveyance from Clay. This conveyance was made in pursuance of an existing decree, and is founded, as we have said, on a valuable consideration, at the time, by Green Clay who held the legal estate. It could not be divested by the reversal. At m«st, it could only give the complainants a claim to that *256 legal estate, which claim could only be demanded la a court e* equ't.V- Whether this reversal wested the defendant.» below with any equitable right to tine title, in a court of equity, we have not thought it necessary now to decide, We shall only'renjark that it might be difficult to establish the position, that the reversal of a decree, would, ⅛ alt cases, unhinge the title of purchasers acquired under it, whatever liabilities it might create against those, who had obtained such an erroneous decree, and disposed of the es-tafe of his opponent, by means of it. This objeetiaa was, therefore properly overruled.
An estate in dower partakes of the estafefoi' the husbaml, if his estate ble^henT'can be no more & therefore can her Pr°ii!ist *M’,S’of on- holding ⅛⅛⅛1* es~
It was proved in the cause, that Porter resided on the tract of land till his death, and that his widow, who was one of the defendants in. this case, resided there stiff, and it did not appear that her dower was ever assigned her. The recovery of the lessor of the plaintiff was then, ob* jected to, on the ground, that she was entitled to the mansion house and farm till her dower was assigned her, under the act of assembly regulating dowers. Whether» widow. Under the laws of this country, is entitled to (tower of an equitable estate held by her husband at his decease, is a question not yet settled. We however feel ourselves under no necessity of deciding it now. For assuming the law to 5^ (s|le ⅛ entitled, her estate or right to hold must pnr-•ftheof the nature of the estate, which her deceased husband held, and cannot be supposed to arise from the. grada 0f an equitable to a lega! estate by force of the statute. ^ course it must yield to a legal estate in another, and b« subject to the same recovery that it would have been in the hands of her husband, if he was living. It coqld not, there-^0|,<3’ Protect *,er ⅛ a court of law against the legal title of the lessor of the plaintiff. For it cannot be pretended that the act of assembly gives such a resident widow a right to the mansion house and farm against all the world, and those who hold superior titles, whatever right it may give her a-» gainst the heirs of the decedent.
During the progress of the trial, Green Clay was offered as a witness on the port of the plaintiff below, and objected to as incompetent. The objection was overruled. We do not perceive the force of the objection. He had give» his bond to Porter to convey all his title and right, and no more. In obedience to the decree, and in the fulfilment of the same bond, he had conveyed to the lessor of the plaintiff, the purchaser, with warranty against himself and heirs, *257 and all claiming under him only. The objection appears to be predicated on tbé supposition, that tbe titles of the plaintiff and defendant in this action, are distinct claims a-r¡3ing from Green Clay. This is not tbe fact. The lessor of the plaintitf claims the same title inequity which the defendants do, with tbe addition of the legal estate conveyed by Clay to him, instead of the defendants, in obedience to tbe decree, and in discharge of. the same equity. The decree itself, at once removes the imputation that he conveyed wrongfully, or that he subjected himself to any action on part of the defendants, or lessor of the plaintiff, by doing so, nor does it in any manner appear, that he could have been subjected to his warranty, if the plaintiff had been defeated in this action. He was therefore properly admitted.
A man con* vejing a ti tc under a decree to lands for which he had beiore given a b >ed with special warran y, is liable on h is warranty to neither party & therefore is a competent witness
Tbe defendants introduced testimony proving that an adverse claim by patent of younger date covered the land; that a certain John Bone, now one of the defendants, acquired that adverse title by conveyance, and settled on the land holding adverse to Clay’s claim — that Clay obtained a judgment in ejectment against Bone, and while the controversy was pending about pay for improvements, Clay sold out to Porter and gave the aforesaid bond. That he directed Porter to settle with Bone about the improvements and the possession, which Porter did do, and got the possession. The counsel for the defendants, moved the court to instruct the jury, that if they believed, from the evidence, that Bone was settled on tbe land at the date of Green Clay’s deed from Mayo, holding' it adversely to Mavo’s claim, the deed from Mayo to Clay was void. This instruction was refused. If the fact had been established, that Bone was in tbe adverse possession of the land before and at the date of Mayo’s deed to Clay, the effect of it Upon the deed of Mayo, might form a very serious question, under tin? act of 1788, 3 Litt. 5t>9, unless Porter’s entry under Clay,.should preclude his heirs from taking advantage ef it. But the fact is not made to appear. The deed from Mayo, is dated in 1791; and Bone’s deed from the adverse patentee, is in 1797. The bill of exceptions, whether worded artfully or ineautiou3¡y, slates that the defendants proved that Bone settled on the land prior to the date of his own deed, and continued to reside thereon for eight or len years, and until long after Mayo's deed to Clay. But hot one word is said about residing tuere before or at the *258 dale of Mayo’s deed. This court has often had to Bielt with abstract questions made in the progress of causes¿ They ought never to be regarded by this, or inferior courts. Although a jury shall judge of the weight of evidence, yet the court must judge of its propriety, and what it conduces to prove. If it does not conduce to prove the facts on which an instruction is hypothecated, the instruction ought to be refused, however sound the principles of law advanced, may be. On this principle, the instruction asked, in the pie* sent instance, was refused properly by the court below. Divers other points were made in the progress of the cause, which are not deemed worthy of notice. A new trial was moved for on divers grounds, which, had they been suggested before trial, could have been urged even then as doubtful grounds of continuance. One ground however, is, that there Was no proof that any of the other defendants, except Mary Porter, the widow, were in possession of the land, and yet they were convicted by the verdict. Ttt this, it may be answered, that it. appears from their own shewing, that they are the heirs of Porter, the deceased— that he died, leaving his family on the land, many or all of them being infants. It docs tot appear that they have removed and left the house of the widow, and the presumption is as fair as any Other, that they remain there still. But independent of this, it appears .that the widow resides there unmolested without dower, and only claims a residence till that is assigned ber. Of course, ihe claim of the family, whatever it may be, belongs to the heirs who are admit ted to defend. Under such circumstances, their ad-n fes’0*i as defendants, was proper, and they had a right to beóeardin that character, as those who claimed the ultimate right to the land, the possession Of the widow being only temporary and consistent With theirs, whether they reside 0« the land err not. Under such circumstances, if the plaintiffs’title proved superior, they ought to tie included it) the Verdict and judgment, although they did not hold ⅜¾ actual possession, and they ought not, in this fictitious action, to be permitted to say, after they bad been heard in fall defence of their title, and had put the plaintiff to costs,-on that account, that they ought to go out and tax him With their costs, because be did hot prove them in possession of the land. Upon the whole, we are of opinion there is no error in the judgment of the court below, and it must be affirmed with costs.
Abstract Questions should never be r-jjarded by the court
The ■possession rifa widow i^mamiirg in the mansion house til her do wer is slotted is con shunt with the possession of the Coirs and in an ejectment bro’t against her they have a right to defend.
Bibb for appellant, Pope for appellee;