(No. 5375. Decided September 5, 1905.)

VIRGINIA WILSON et al., Appellants, v. WATSON HUBBARD et al., Respondents.[1]

INFANTS — JUDGMENTS — VACATION — LIMITATIONS. A judgment entered against infants upon proper service is not void, but voidable only, and cannot be attacked for fraud or error of law, under Bal. Code, § 5153, unless the proceeding is commenced within one year after the infants attain majority.

JUDGMENT—FINDINGS—RES JUDICATA. Findings of fact and conclusions of law in a suit in which no final judgment was entered are not res judicata of the issues determined.

APPEAL — REVIEW — HARMLESS ERROR — ERRONEOUS PARTITION OF LANDS LOST IN FORECLOSURE. Error in failing to vacate a decree of partition is not prejudicial, where the interests of all the parties were, subsequent to the partition, sold under mortgage foreclosures and there was nothing to authorize the vacation of the foreclosures.

SUBROGATION—LOAN TO PAY DEBTS OF ESTATE—WHEN NOT A VOLUNTEER. A mortgagee who in good faith loans money to one to whom

1Reported in 82 Pac. 154.

the lands of an estate had been partitioned, and the money is used to pay the debts of the estate, is not a mere volunteer and is entitled to be subrogated to the rights of the creditors, upon the failure of his security through defects in the partition proceedings.

SAME—RE-INSTATING REDEEMED MORTGAGE. Upon a defense to the foreclosure of a void mortgage given by a guardian without authority, the plaintiff may plead the fact of a former valid mortgage on the property, which was redeemed by the guardian with the money loaned on the mortgage in suit, and is entitled to an equitable subrogation reinstating the former mortgage.

INFANTS—MORTGAGE OF LANDS. The authority to sell an infant's real estate does not give authority to mortgage it.

Appeal from a judgment of the superior court for Spokane county, Honorable A. G. Kellam, Judge *pro tempore*, entered March 11, 1904, upon findings in favor of the defendants, dismissing on the merits an action to vacate judgments. Affirmed.

*Barnes & Latimer* and *Scott & Rosslow* (*Alfred M. Craven* and *Denton M. Crow*, of counsel), for appellants.

*William T. Stoll* and *B. B. Adams*, for respondents.

CROW, J.—Action in the superior court of Spokane county, by appellants, Virginia Wilson and John Wilson, plaintiffs below, to vacate three certain decrees of said court; the first being in cause No. 2,332, a partition proceeding; the second, in cause No. 10,073, a foreclosure suit; and the third, in cause No. 10,072, also a foreclosure suit.

In their petition, plaintiffs alleged that one Virginia Wilson died February 14, 1888, leaving the defendant Charles D. Wilson, her husband, the plaintiffs, Virginia Wilson and John Wilson, and the defendants Frank Wilson, Ellen A. Wilson, Charles Wilson, and Spray Wilson, her minor children, as her only heirs at law; that all of said children were then under fourteen years of age; that she had executed a will making her husband her sole legatee; that said will did not mention any of said minor children, and by reason thereof was void as to them; that said Charles D. Wilson

caused said will to be probated, took possession of the estate, and proceeded with administration thereof; that said Virginia Wilson died seized of about $800 worth of personal property, and the following real estate, all in Spokane county, to wit: the west half of lot 3, in block 15, of the original town of Spokane Falls, now Spokane, known and hereinafter referred to as the Main street property; lots 1, 2, and 3, in block 14, of Post's addition to Spokane, known and hereinafter referred to as the Falls View property; and, also, 320 acres of land in section 13, Tp. 26, N., R. 42, E., W. M., known and hereinafter referred to as land, all being separate property of said decedent; that on April 8, 1902, plaintiff Virginia Wilson became eighteen years of age, and on October 26, 1902, plaintiff John Wilson became twenty-one years of age, this action being commenced within one year thereafter; that the defendant Spray Wilson was an infant sixteen years of age; that during said administration said Charles D. Wilson acted as guardian of all of the said children; that afterwards, and before said administration was completed, to wit: on September 22, 1901, said Charles D. Wilson, in his own proper person only, instituted, in the superior court of Spokane county, cause No. 2,332, hereinafter styled the partition proceedings, wherein he was plaintiff and all said children, Frank, Ellen A., Charles, John, Virginia, and Spray Wilson were defendants, praying partition of all real estate of said decedent; that at said time no account had been made by said Charles D. Wilson as executor; that the debts of said estate amounted to $7,000, and that no real estate had been sold to pay the same; that on January 21, 1892, an order was made appointing referees to appraise and partition said real estate; that a partition was afterwards made and confirmed, whereby said Falls View property was allotted to said Charles D. Wilson, and the remainder of said real estate, to wit: the Main street property and land were

43—39 WASH.

allotted to said minor children; that, at the time of commencing said partition proceedings and prior thereto, said Charles D. Wilson, as executor, had collected more than $13,000 rents and profits from said estate, which he had failed to account for, but converted to his own use; that there was sufficient estate to have paid all debts and leave $40,000; that said Charles D. Wilson, well knowing that in an accounting the rents and profits received by him would be set off against his distributive share, and leave him practically nothing, took advantage of his position of trust as such executor, and with the intent of defrauding said minors of their share of said estate, and of securing in his own name the sole title to said Falls View property, brought said action in partition, and in his complaint therein fraudulently and falsely alleged that all of said real estate was community property; that its income did not exceed $1,000 per annum, and had not been sufficient to support himself and said minor children; that he had no money with which to satisfy a certain mortgage debt of $1,500 and interest, upon the Main street property, which had been foreclosed; that he had, from time to time, in said probate proceedings, obtained orders to sell sufficient of said real estate to pay debts, but had been unable to make any sales.

Plaintiffs further alleged that, in fact, the income from said estate had been $3,000 per annum, more than sufficient to pay all debts; that said executor had never made any *bona fide* attempt to sell any of said real estate, under the orders of said court in said probate proceedings; that, in pursuance of his said fraudulent intent, said Charles D. Wilson in said partition proceedings studiously avoided any showing as to the precise condition of his accounts as executor; that said Charles D. Wilson, while acting as guardian of said minors, never filed any bond, except one of $500, the sureties on which were insolvent; that his executor's bond was only for $4,800; that said bonds were

grossly inadequate; that in said partition proceedings one
R. C. Hall was appointed to take testimony; that testimony
taken before said Hall was filed with the clerk of said
court on January 19, 1892, but that no order appointing
said Hall was ever entered prior to January 21, 1892; that
no order appointing a guardian *ad litem* was ever entered
prior to January 21, 1892, on which date the court, relying
upon the testimony taken by said Hall and upon his report,
and ignorant of the true facts, being deceived by the con-
duct of the said Charles D. Wilson, did enter an interloc-
utory decree directing partition and appointing referees;
that the court was without jurisdiction to make said de-
cree; that no objections were made to said report or decree
by the guardian *ad litem;* that the referees appointed were
intimate friends of said Charles D. Wilson, acting under
his influence and suggestions; that they had no knowledge
of real estate values; that they took no evidence; that they
exercised no judgment, but guessed at values, placing the
value on said Charles D. Wilson's portion of said land at
$15,000, and on the share allotted to said minors at $14,-
000; that said partition was grossly unequal and unjust;
that the said Falls View property, being the property
allotted to said Charles D. Wilson, was then worth $35,000,
and was then only encumbered by a mortgage of $1,400;
that said land allotted to said minors was encumbered by
a mortgage of $1,100 with interest, while said Main street
property, also allotted to said minors, had already been
sold under mortgage foreclosure on February 7, 1891, and
that the equity in all the property allotted to said minors
was worth not to exceed $1,100; that the court, ignorant
of the fraudulent conduct of Charles D. Wilson and the
unfair partition of said referees, and influenced thereby,
and, also, by the fact that but a short time would elapse
before the expiration of the period of redemption from said
foreclosure sale of said Main street property, did, on Janu-
ary 26, 1892, enter a final decree of partition, and in so

doing allotted to said minors said Main street property and land, and allotted to said Charles D. Wilson said Falls View property; that, in said decree, said court directed that one-half of the indebtedness of said estate be made a lien upon land allotted to said Charles D. Wilson, and the other half upon the lands allotted to said minors; and also decreed that said Charles D. Wilson, as guardian of said minors, be authorized and empowered to mortgage the whole or any part of the real estate allotted to said minors, for the purpose of raising sufficient funds to pay off and discharge one-half of the indebtedness of said estate, less $1,000, the difference in value of the lands partitioned to said Charles D. Wilson and said minors; that, subsequently, on March 21, 1892, said Charles D. Wilson, assuming to be the owner of said Falls View property, executed a mortgage thereon for $7,000, and, as guardian of said minors, also executed a separate mortgage on said Main street property for $3,000; that said mortgages were made to Rogers and Roberson, agents for the defendant Watson Hubbard, and were by them immediately assigned to said Hubbard.

The petition herein further alleged that, on or about September 25, 1895, the said Hubbard commenced two separate foreclosure actions, in the superior court of Spokane county, one being cause No. 10,073, on said $7,000 mortgage executed by said Charles D. Wilson in his own right, and the other being cause No. 10,072, on said $3,000 mortgage executed by said Charles D. Wilson as guardian; that, at the time of the commencement of said actions, the plaintiffs herein were under the age of fourteen years, and they were not served with process therein; that, in cause No. 10,073 to foreclose said mortgage of $7,000, all of said minors, being made defendants, appeared by their guardian *ad litem,* and, answering, disclaimed any interest in the Falls View property subsequent to said mortgage, but claimed prior and paramount adverse title and asked to be dismissed; that, after trial upon the issues found, and be-

fore entry of final decree, the said superior court in said cause No. 10,073 permitted said Hubbard to file a second amended complaint to correspond with the facts proven upon the hearing; that, in said second amended complaint, said Hubbard in substance alleged that the proceeds of the loan made by him to the said Charles D. Wilson upon said mortgage were applied in payment of a prior mortgage lien upon said Falls View property, and, also, other debts of the estate of said Virginia Wilson, deceased (which however did not include the foreclosed mortgage on said Main street property), and asked to be subrogated to the rights of the former holders of said liens against said estate; that, thereupon, a decree of foreclosure was entered, and from the findings of fact, conclusions of law, and said decree, it appears that the court found and adjudged said Hubbard to be entitled to such subrogation; that, afterwards, at a sheriff's sale, said real estate was purchased by said Hubbard, who afterwards obtained a sheriff's deed, and now has possession of said Falls View property claiming title thereto.

Said petition further alleged that, in said cause No. 10,072, said Hubbard foreclosed upon the Main street property said mortgage executed by Charles D. Wilson as guardian, but failed to allege the fact, shown by the record, that in said cause 10,072, said Hubbard amended his complaint, pleading his equitable right to be subrogated to the prior foreclosed mortgage on said Main street property, which was paid with the money loaned by him, but for some unexplained reason a copy of his amended complaint is attached to plaintiffs' petition herein as an exhibit. Plaintiffs, however, do allege sale of said Main street property under said foreclosure proceedings, and a purchase thereof by respondent Hubbard, who now holds possession and claims title.

Plaintiffs asked the court to vacate the final decree in said partition proceedings, for: (1) Want of jurisdiction in

said court to make said partition; (2) fraud upon the part
of said Charles D. Wilson in obtaining an unfair partition;
and (3) error claimed. They also asked the court to vacate
the foreclosure proceedings in said causes No. 10,073, and
10,072, for error claimed.

The defendant Spray Wilson, a minor, appeared by her
guardian *ad litem* properly appointed, and answered, asking
that her interests be protected. The defendant Watson
Hubbard answered, and for affirmative defense, alleged
that, sometime in 1896, Frank Wilson and Ellen A. Wilson,
defendants herein, within twelve months after they had
severally arrived at the age of majority, commenced cause
No. 10,049 in the superior court of Spokane county, against
the defendants Charles D. Wilson and Charles Wilson, and
against the said John Wilson and Virginia Wilson, plain-
tiffs herein, who were defendants in said action, and against
said Spray Wilson and Watson Hubbard, defendants herein,
to vacate said partition decree; and in their complaint, in
substance, alleged the identical facts alleged and set forth
in the petition herein; that in said action the plaintiffs
herein, John Wilson and Virginia Wilson, being duly
served with process, appeared by their guardian *ad litem*
duly appointed; that said defendant Watson Hubbard also
appeared and resisted said action; that, on trial, evidence
was introduced on both sides, a complete hearing had, and
the court made findings of fact and conclusions of law,
upon the issues joined, in favor of said Hubbard, said
conclusions of law being: (1) That said partition decree
sought to be set aside should be in all respects confirmed
and approved; (2) that the plaintiffs take nothing in said
action; (3) that the said Watson Hubbard recover his
costs. The answer of said Watson Hubbard fails to allege,
nor does it appear, that any final decree was ever entered
upon said findings of fact and conclusions of law, which
are here pleaded by him as *res judicata.*

In his answer, said Hubbard also pleaded said foreclosure

proceedings in cause 10,073 of said mortgage executed by and Charles D. Wilson on said Falls View property, setting forth at length his second amended complaint, in which he invoked the equitable doctrine of subrogation, together with the findings of fact, conclusions of law, and decree of the court sustaining said claim to subrogation. He also pleaded the foreclosure proceedings in cause No. 10,072 on said mortgage executed by said Charles D. Wilson as guardian, and the sale thereunder. He pleaded his amended complaint in said action, which alleged his equitable right of subrogation to said prior foreclosed mortgage paid by the proceeds of his loan, and also set forth at length the findings of fact, conclusions of law, and decree entered by the trial court sustaining such plea of subrogation. He also claimed both of said foreclosures to be *res judicata.*

The defendant Charles Wilson filed an answer in which he admitted the allegations of the petition, and by way of cross-petition affirmatively pleaded, in substance, the same facts alleged in the original petition, and asked the same relief demanded by plaintiffs. From his answer, it appears that he attained the age of majority on May 6, 1901, more than twelve months prior to the commencement of this action. The defendants Frank Wilson and Ellen A. Wilson also filed an answer admitting the allegations of the petition, and also of the cross-petition of the defendant Charles Wilson, and prayed for the same relief demanded by plaintiffs.

Trial was had upon these pleadings. Findings of fact and conclusions of law were made, and a final decree was entered refusing to vacate any of said judgments, and affirmatively quieting the title of the defendant Watson Hubbard to all real estate upon which he had made foreclosure. From said final judgment, this appeal has been taken by the plaintiffs, Virginia Wilson and John Wilson, the defendants Frank Wilson, Ellen A. Wilson, and Charles

Wilson, and by the defendant Spray Wilson, by her guardian *ad litem.*

The above, although quite lengthy, contains only a portion of the many complicated facts and issues herein, but is sufficient for a discussion of the principles involved. Appellants are proceeding under sections 5153 and 5156, of chapter 17, Ballinger's Code, relative to the vacation and modification of judgments. Section 5153 provides that,

"The superior court in which a judgment has been rendered, or by which or the judge of which a final order has been made, shall have power, after the term [time] at which such judgment or order was made, to vacate or modify such judgment or order:— . . . (4) For fraud practiced by the successful party in obtaining the judgment or order; . . . . (8) For error in a judgment shown by a minor, within twelve months after arriving at full age."

Section 5156 provides that,

"The proceedings to obtain the benefit of subdivisions two, three, four, five, six, and seven of section 5153 shall be by petition verified by affidavit, setting forth the judgment or order, the facts or errors constituting a cause to vacate or modify it, and if the party is a defendant, the facts constituting a defense to the action; and such proceedings must be commenced within one year after the judgment or order was made, unless the party entitled thereto be a minor or person of unsound mind, and then within one year from the removal of such disability."

Under these sections, appellants contend that, having commenced this action within one year after attaining majority, they are entitled to attack said original judgments first, for fraud practiced by the successful party in obtaining the same; and, second, for error shown. It is alleged by appellants that they were not served with process in any one of said actions, while respondent Hubbard alleged they were properly served, and were represented by guardian *ad litem.* Upon this issue, we must, from examination of the record, sustain respondent's contention. A judgment entered against

a minor upon proper service is not void, but voidable only, and unless attacked within the proper period after the disability of infancy has ceased to exist, continues to be as valid as though rendered against persons under no disability whatever. *Kromer v. Friday,* 10 Wash. 621, 39 Pac. 229, 32 L. R. A. 671; 1 Daniell, Chancery Pr. (6th. Am. ed.), § 164; Black, Judgments (2d ed.), § 193; *Porter v. Robinson,* 10 Ky. 253, 13 Am. Dec. 153, and note; *Joyce v. McAvoy,* 31 Cal. 273, 89 Am. Dec. 172; *Harrison v. Wallton's Ex'r,* 95 Va. 721, 30 S. E. 372, 64 Am. St. 830, 41 L. R. A. 703; *Robertson v. Blair,* 56 S. C. 96, 34 S. E. 11, 76 Am. St. 543.

Upon attaining majority, and within the time limited either by the rules of common law or statute, such minors may attack any such judgment for fraud or error shown. In this state, statutory relief is afforded, as said sections 5153 and 5156 secure to appellants herein one year after coming of age, within which, by proper proceedings and upon proper showing and allegations, they may attack said judgments for fraud, or for error shown. *Morrison v. Morrison,* 25 Wash. 466, 65 Pac. 779; *Ball v. Clothier,* 34 Wash. 299, 75 Pac. 1099.

Fraud sufficient to authorize such an attack must clearly appear from the allegations of the petition for vacation, showing not only that such fraud existed, but also that the court was influenced and deceived thereby, and induced to enter a judgment or decree prejudicial to the interests of said infants. Where it is sought to vacate a decree on the ground of error shown, said error must be prejudicial, must clearly appear upon the face of the record in the original proceedings, and must be such error as would have entitled the minor to a reversal of said decree or judgment upon appeal, had he been under no disability at the time of its entry, and in a position to prosecute such appeal. *Webster v. Page,* 54 Iowa 461, 6 N. W. 716.

Keeping these principles in mind, it becomes necessary

to examine the pleadings, records, and proceedings herein, and ascertain what relief, if any, appellants are entitled to receive. Appellant Charles Wilson is entitled to no relief, because he made no application therefor within the time provided by law. For the same reason, the appellants Frank Wilson and Ellen A. Wilson cannot recover, not having assailed said foreclosure decrees. As to said appellants, the judgment of the superior court should be, in any event, affirmed. *Wolferman v. Bell*, 8 Wash. 140, 35 Pac. 603; *Hill v. Lowman*, 15 Wash. 503, 46 Pac. 1042; *Eisenmenger v. Murphy*, 42 Minn. 84, 43 N. W. 784, 18 Am. St. 493.

Respondent Watson Hubbard, as above stated, has pleaded the proceedings in said cause No. 10,049, instituted by Frank Wilson and Ellen A. Wilson to vacate said partition decree, alleging the same to be *res judicata* as against all the appellants, on the theory that they were all served with process therein, and appeared and contested said action by their guardian *ad litem*. The record in said cause shows that findings of fact and conclusions of law were made which would have entitled respondent Hubbard to a decree in his favor, but no final decree was entered. In the absence thereof, said findings of fact and conclusions of law are not *res judicata*.

"The weight of authority supports the view that it is not the finding of the court or the verdict of the jury rendered in an action that concludes the parties in subsequent litigation, but the judgment entered thereon, for the verdict when rendered, is under the control of the court in which the action was tried, and may be set aside for good reasons, and hence it is necessary, in order to support the plea of *res judicata,* that a judgment, decree, or final order should have been actually rendered and entered in the prior action or suit." 24 Am. & Eng. Ency. Law (2d ed.), 792.

See, also, *Child v. Morgan*, 51 Minn. 116, 52 N. W. 1127.

Having made these observations, we will now proceed to consider what right, if any, appellants Virginia and John

Wilson, plaintiffs below, and appellant Spray Wilson, minor defendant below, have to relief herein, and in so doing will separately discuss said three original judgments assailed by them.

(1)  As to the partition decree:  It appears that, upon the trial of this action in the court below, the appellants offered oral evidence tending to prove the various charges of fraud contained in their petition, and also offered certain record evidence tending to show that the real estate, of which their mother died seized, was her separate property. These offers being rejected, appellants assign error.  We think appellants' petition as to the final decree in said partition proceedings stated a cause of action, and that sufficient fraud was alleged therein to have authorized the admission of the evidence offered, had no litigation occurred subsequent to said partition decree to so change the situation as to cause said evidence to become immaterial.  Appellants contend they are entitled to a vacation of said partition decree by reason of: (1) Fraud alleged; (2) want of jurisdiction; (3) error shown.  The allegations of their petition clearly show fraud.  We think, however, the court had jurisdiction to enter said decree, said cause No. 2,332 being an action in partition, and no creditors of the estate of said decedent appearing or objecting.

As to the third proposition, for the reasons hereinafter stated, we do not deem it necessary to discuss the question whether error has been shown upon the record.  No possible benefit could enure to appellants from a vacation of said partition decree, unless, upon a rehearing of said cause, they could secure some tangible beneficial relief not now enjoyed by them.  For reasons hereinafter stated, however, we hold that neither one of said foreclosure decrees can be vacated.  This being true, an order vacating the partition decree would not, upon a retrial of the partition action, enable appellants to secure any additional property or benefit therein, as all the real estate, claimed to have been unjustly

allotted to Charles D. Wilson, and also said Main street property, have been forever lost to the estate, leaving only the farm land which has been allotted to said minors, and which, so far as this record shows, they still have. It would certainly be an idle proceeding to now vacate said decree for fraud or error. Under these circumstances, we think the trial judge, in sustaining an objection to the offer of said evidence, did not commit prejudicial error, nor did he err in refusing to vacate said partition decree.

(2) As to the foreclosure in cause No. 10,073 of the mortgage executed by Charles D. Wilson in his own proper person: Appellants, in attacking said decree, have not made any allegations sufficient to show fraud upon the part of respondent Watson Hubbard in taking or foreclosing said mortgage. It appears that, when he took said mortgage, said Charles D. Wilson professed to execute the same in his own right, and under said partition proceedings had apparent record title to, and possession of, the real estate involved. Respondent Hubbard took said mortgage in good faith, paying a valuable consideration therefor. It is true that in said foreclosure action respondent Hubbard, being plaintiff therein, made all said minor heirs defendants, who, being served with process, appeared by guardian *ad litem,* pleaded paramount title, and asked to be dismissed. Under an order of the court, however, properly obtained, said Hubbard amended his complaint alleging his equitable right to be subrogated to the liens of creditors of said Virginia Wilson, deceased, for debts paid with money loaned by said respondent Hubbard to said Charles D. Wilson on the faith of said mortgage. One who in good faith lends money which is actually used to pay debts of an estate, under an agreement that he shall have security upon the estate, and in pursuance of said agreement takes a mortgage for his security, which proves invalid, will be subrogated to the benefit of the liens held by the creditors of said estate who were paid with his money. Sheldon, Subrogation, § 8; *Detroit*

*etc. Ins. Co. v. Aspinwall,* 48 Mich. 238, 12 N. W. 214; *Crippen v. Chappel,* 35 Kan. 495, 11 Pac. 453; *Lockwood v. Bassett,* 49 Mich. 546, 14 N. W. 492; *Wyman v. Johnson,* 68 Ark. 369, 59 S. W. 250; *DeConcillio v. Brownrigg,* 51 N. J. Eq. 532, 25 Atl. 383; *Arlington State Bank v. Paulsen,* 57 Neb. 717, 78 N. W. 303.

In his second amended complaint, respondent Watson Hubbard alleged that the money loaned by him upon the faith of said mortgage security had been actually used by said Charles D. Wilson to discharge debts of said estate, and the trial court made findings of fact upon said allegation in favor of said respondent, thereby subrogating him to the liens of said creditors, and affording him equitable relief to which he was entitled. In this the trial court did equity. Respondent Hubbard was thereby equitably subrogated to liens which were prior to any interests of said minor heirs, who, as against such prior liens, could not successfully plead paramount title. Respondent Hubbard, in making said loan, was not a mere volunteer making payment of the debts of said decedent in such a manner as to deprive him of the right of subrogation. We are unable to find any fraud alleged, or error apparent on the record in said foreclosure cause No. 10,073, which would entitle appellants to a vacation of the decree therein.

(3) As to the foreclosure in cause No. 10,072 of the mortgage executed by Charles D. Wilson as guardian: This foreclosure action was finally tried upon an amended complaint, in which said Hubbard pleaded the fact of a former mortgage executed by said Virginia Wilson, mother of said minors, its foreclosure, and the redemption of the real estate therefrom with the identical money loaned to said guardian by said Hubbard. The order of the court authorizing the execution of said mortgage was also pleaded. In fact, said respondent Hubbard, in said amended complaint, pleaded facts which, beyond question, entitled him to the benefit of the equitable doctrine of subrogation; and the trial court

made findings on all of said facts in favor of said Hubbard, and entered an equitable decree thereon.

Appellants, however, claim that the order of the trial court in the partition proceedings authorizing said mortgage was void, and that it was error to order its foreclosure.

"It seems to be a doctrine sustained by a preponderance of authority that a court of equity has no power, as a part of its jurisdiction over infants, to order a sale of the infant's real estate for purposes of maintenance, education, or investment." 3 Pomeroy, Equity Jurisprudence, § 1309. See, also, *Rogers v. Dill,* 6 Hill 415; *Trutch v. Bunnell,* 11 Ore. 58, 4 Pac. 588, 50 Am. Rep. 456; *Hoyt v. Jaques,* 129 Mass. 286. If, in absence of statutory authority, a court of equity has no power to order a sale of an infant's real estate, certainly it could not authorize a guardian to mortgage the same. Counsel for respondent Hubbard contend that, under the circumstances shown here, a court of equity has inherent power to authorize said mortgage to secure the preservation of the estate of said minors from imminent loss, and in support of such contention cite, with much confidence, the case of *Northwestern Guaranty L. Co. v. Smith,* 15 Mont. 101, 38 Pac. 224, 48 Am. St. 662. It is true that said case substantially announces the doctrine contended for, the syllabus in the official report reading as follows:

"The absence of a statute authorizing a guardian to mortgage his ward's real estate does not render void a mortgage given by a guardian under an order of the district court by which no new debt is created, but merely an exchange of one creditor for another is effected and an advantageous extension of time and reduction of interest secured."

An examination of the statement of the case made by the learned judge who delivered the opinion will show said action was instituted to foreclose a mortgage executed by a guardian under an order of court. The complaint in foreclosure not only pleaded said mortgage and its history, but

also fully alleged facts showing the holder thereof to have
loaned funds which were used by the guardian to pay a
previous valid mortgage, on the same real estate, for no
greater sum, upon which immediate foreclosure was threat-
ened, thereby preserving the estate of the ward, temporarily
at least, from absolute loss. We think said facts entitled the
plaintiff to the benefit of the equitable doctrine of subrogation
which we have heretofore discussed. Respondent Hubbard
was undoubtedly entitled to the same equities in said cause
No. 10,072. We do not think, however, that the facts
pleaded in the Montana case warranted the doctrine there
implied, to the effect that the court, in the absence of stat-
ute, had authority to order the execution of said mortgage.
In said Montana case the mortgage was authorized in an
action instituted for the sole purpose of obtaining such
order, while here the order was entered in an action in
which said Charles D. Wilson, as guardian of said minor,
was not even a party, in a most irregular and erroneous
manner, and without jurisdiction. Yet in that case, as in
this, the mortgage was executed, and thereby a valid prior
mortgage was discharged, and the real estate was tempo-
rarily saved from loss. The final judgment in the Montana
case directing a demurrer to the foreclosure complaint to
be overruled was undoubtedly right. In this state we have
statutes authorizing an order to sell an infant's real estate,
Bal. Code, §§ 6411-6416, and §§ 6460-6469; but authority to
mortgage cannot be implied from such authority to sell.
*Trutch v. Bunnell, supra.*

The facts exist, however, that a purported mortgage was
executed by said Charles D. Wilson, guardian, in pursuance
of said pretended order of court; that respondent Hubbard
in good faith loaned his money on the faith thereof; that
the money so loaned was used to pay a valid lien on said
real estate which was prior and paramount to any interests
of appellants, and that thereby a threatened, immediate, and
final loss of their property was obviated. Conceding the

order to mortgage and the mortgage itself to have been void, nevertheless respondent Hubbard, under the doctrine of subrogation, was equitably entitled to have the former mortgage reinstated and foreclosed for his benefit. *Crippen v. Chappel, supra.* This in effect was the substantial result of the final decree in said cause 10,072, and in doing justice here, it becomes an immaterial consideration as to whether said guardian's mortgage was void. Appellants have not offered or shown any willingness to pay the amount now due on the prior mortgage executed by their mother, neither have they offered to redeem from respondent's mortgage. We fail to see that they have shown any defense to respondent's claims. The superior court certainly had jurisdiction in cause No. 10,072 of the subject-matter and the parties, and appears to have done equity. We fail to find any prejudicial error in said foreclosure decree, and the trial court committed no error in refusing to vacate the same.

The judgment is affirmed.

MOUNT, C. J., RUDKIN, and ROOT, JJ., concur.